IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MONICA VASQUEZ,                     )
                                    )
            Plaintiff,              )
                                    )
vs.                                 )        Case No. 16-cv-0510-MJR-RJD
                                    )
MERIDIAN SECURITY                   )
INSURANCE COMPANY (named as         )
"State Auto Insurance Companies"),  )
                                    )
            Defendant.              )

MEMORANDUM AND ORDER

REAGAN, Chief Judge:

A.      Introduction and Procedural Overview

On February 19, 2014, Monica Reaka Vasquez (Plaintiff) sustained injuries when

the car she was driving was hit by a vehicle driven by Susan Lynch.  Plaintiff was a

named insured on a policy of underinsured motorist insurance which was issued to her

husband by Meridian Security Insurance Company (Meridian).  Lynch, the at-fault

driver, was insured by Country Preferred Insurance Company (Country).[1]  Lynch's

policy had a bodily injury limit of $100,000 per person.  Plaintiff made a demand on

Lynch's insurance company to recover damages.  Subsequently, through counsel,

---

[1]      The answer and counterclaim herein (Doc. 11) clarify that Meridian was
incorrectly sued under the name "State Auto Insurance Companies." Plaintiff
refers to Lynch's insurer as "Country Financial." Meridian refers to the insurer
as "Country Preferred Insurance Company."  Lynch's insurer's precise name has no
bearing on resolution of the issues now before the Court.

Plaintiff demanded underinsured motorist coverage from Meridian.  Meridian denied coverage on the basis that Plaintiff violated several provisions of its policy.

Plaintiff filed suit in the Circuit Court of St. Clair County, Illinois against Meridian, seeking a declaration of the obligations of the parties under the policy issued by Meridian -- policy number AIL0037455, with an effective period of May 16, 2013 to May 16, 2014 (the Policy).  Specifically, Plaintiff seeks a declaration that she is entitled to underinsured motorist (UIM) benefits, because the Policy language is ambiguous, and Meridian "must, therefore, tender the policy limits of Plaintiff's underinsured coverage" (Doc. 1, p. 8).

Meridian timely removed the action to this District Court.  The undersigned enjoys subject matter jurisdiction via the federal diversity statute, 28 U.S.C. 1332.  On May 19, 2016, Meridian filed an answer to Plaintiff's complaint and a counterclaim for declaratory judgment.  Meridian seeks a declaration that it has no obligation to provide UIM benefits for the February 19, 2014 accident, because Plaintiff failed to give Meridian written notice of a tentative settlement she reached with Lynch, failed to give Meridian 30 days to advance payment in an amount equal to the proposed settlement (thereby preserving Meridian's rights against Lynch), and failed to file suit against Lynch prior to finalizing the settlement with Lynch, "all of which is in breach of Vasquez's duties to Meridian under her policy" (Doc. 11, p. 13).

Now before the Court are the parties' cross-motions for summary judgment, filed with supporting and opposing memoranda, supplements, exhibits, and reply briefs through mid-September 2016.  The issues are ripe for disposition.  For the reasons stated

below, the Court grants Meridian's motion and denies Plaintiff's motion.   Analysis begins with reference to the applicable legal standards.

          **B.**      **Standard Governing Summary Judgment Motions**

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment will be granted where the admissible evidence shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Taylor-Novotny v. Health Alliance Medical Plans, Inc.*, **772 F.3d 478, 488 (7th Cir. 2014).** *Accord Archdiocese of Milwaukee v. Doe*, **743 F.3d 1101, 1105 (7th Cir. 2014),** *citing* **FED. R. CIV. P. 56**.  A "material fact" is a fact that affects the outcome of the lawsuit, i.e., it is outcome-determinative under the applicable substantive law. *Taylor-Novotny*, **772 F.3d at 488;** *Hanover Ins. Co. v. Northern Building Co.*, **751 F.3d 788, 791 (7th Cir.),** *cert. denied*, **135 S. Ct. 280 (2014)**.

A genuine issue of material fact remains, and summary judgment should be denied, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Miller v. Gonzalez*, **761 F.3d 822, 827 (7th Cir. 2014),** *quoting Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986)**.  Conversely, if the factual record taken as a whole could not lead a reasonable jury to find for the non-moving party, then "there is nothing for a jury to do," and summary judgment is properly granted. *Bunn v. Khoury Enters., Inc.*, **753 F.3d 676, 682 (7th Cir. 2014),** *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, **475 U.S. 574, 587 (1986)**.

In assessing whether a genuine issue of material fact exists, this Court views the record in the light most favorable to the nonmoving party.  *Bunn*, **753 F.3d at 682,** *citing*

*Anderson*, 477 U.S. at 255.  *See also 520 South Michigan Ave. Associates, Ltd. v. Unite Here Local 1*, 760 F.3d 708, 718 (7th Cir. 2014).  So, as required by Rule 56(a), this Court "set[s] forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving her the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in her favor."  *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

On cross-motions for summary judgment, the court "draw[s] inferences 'in favor of the party against whom the motion under consideration was made.'"  *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 874 (7th Cir. 2015), *quoting McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 500 (7th Cir. 2008)).  In other words, the undersigned views the facts and reasonable inferences in the light most favorable to the nomovant on each motion.  *Lalowski v. City of Des Plaines*, 789 F.3d 784, 787 (7th Cir. 2015).

### C.     Applicable Principles of Insurance Law

The ultimate question in the case at bar is whether Meridian owes any coverage obligation under the UIM policy issued to Plaintiff's husband, under which Plaintiff was a named insured.  There are no disputed facts here, "only a dispute as to the legal interpretation of the Meridian policy language" (Doc. 25, p. 1).

"The interpretation of an insurance policy is a matter of state law." *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 777 (7th Cir. 2015), *citing Koransky, Bouwer & Poracky, P.C. v. Bar Plan Mut. Ins. Co.*, 712 F.3d 336, 341 (7th Cir. 2013).  *See also Nat'l American Ins. Co. v. Artisan and Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015)

("In diversity cases, we apply federal procedural law and state substantive law. Questions of insurance-policy interpretation are substantive. So our interpretation of this insurance policy must be according to state law.")

Under Illinois law—which the parties agree governs—an insurance policy is a contract and should be interpreted as such.[2] *Westfield*, 796 F.3d at 777, *quoting Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005). The court's primary objective in this process "'is to ascertain and give effect to the intention of the parties, as expressed in the policy language.'" *Id.* at 777-78. The court must construe the policy as a whole, "taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured, and the purposes of the entire contract." *Id.* at 778, *quoting Crum & Forster Managers Corp. v. Resolution Tr. Corp.*, 620 N.E.2d 1073, 1078 (Ill. 1993).

As long as the policy provision is unambiguous and does not offend public policy, the provision must be applied as written. *Netherlands Ins. Co. v. Phusion Projects, Inc.*, 737 F.3d 1174, 1177 (7th Cir. 2013). Ambiguities are construed liberally in favor of the insured, but the court will find an ambiguity only if the policy language is susceptible to more than one reasonable interpretation -- not simply because the parties disagree as to the provision's meaning. *Id.; Commonwealth Ins. Co. v. Stone Container Corp.*, 351 F.3d 774, 778 (7th Cir. 2003).

---

[2]   The Court, too, concludes that Illinois law applies, as Illinois has the most significant contacts and relationship with this matter (Plaintiff is an Illinois citizen, the policy was issued to an Illinois address, Plaintiff's vehicle was principally located in Illinois, the accident occurred in Illinois, etc.).

Stated another way, policy terms are not ambiguous simply because they conceivably might mean something else or because the parties "can suggest creative possibilities for their meaning." *Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 340 (7th Cir. 2010), *citing Valley Forge Ins. Co. v. Swiderski Electronics, Inc.,* 860 N.E.2d 307, 314 (Ill. 2006); *Shelton v. Andres*, 478 N.E.2d 311, 314 (Ill. 1985).

"It is a necessary prerequisite to recovery upon a policy for the insured to show a claim within the coverage provided by the policy." *Richter v. Standard Mut. Is. Co.,* 664 N.E.2d 1140, 1144-45 (Ill. App. 1996), *quoting Waste Management, Inc. v. Int'l Surplus Lines Ins. Co.,* 579 N.E.2d 322, 333 (Ill. 1991). Once the insured has brought herself within the terms of the policy, the insurer attempting to limit liability by excluding coverage must affirmatively demonstrate the applicability of a policy exclusion. *State Farm Mutual Automobile Insurance Co. v. Schmitt*, 419 N.E.2d 601, 603 (Ill. 1981).

The placement or location of language within an insurance contract does not determine which party bears the burden of proof on that provision. *Rutgens Distributors, Inc. v. U.S. Fidelity & Guaranty Co.,* 419 N.E.2d 59, 63 (Ill. App. 1981). For example, even if a coverage-*precluding* provision is not within the section labeled "Exclusions," the burden remains on the insurer to prove the provision's applicability, as long as the result is an attempt to limit coverage. *Id.*

Also at play in the case at bar is the concept of subrogation. Subrogation is the substitution of one person or entity for another—i.e., one person is allowed to "stand in the shoes" of another and assert that person's rights against a defendant. *State Farm*

*Mut. Auto. Ins. Co. v. Easterling***, 19 N.E.3d 156, 162–63 (Ill. App. 2014),** *citing Trogub v.* *Robinson***, 853 N.E.2d 59 (Ill. App. 2006).**  Subrogation arises where, for some justifiable reason, a party has paid a debt owed by the defendant. *Id.*  "Having paid the defendant's creditor, the party stands in the creditor's shoes and is entitled to exercise all the remedies which the creditor possessed against the defendant." *Id.* **(internal quotation marks and citations omitted).**  The subrogee succeeds to the legal rights or claims of the subrogor. *Id.*

In the insurance context, subrogation rights arise "where (1) a third party has caused a loss and is primarily liable to the insured for the loss, (2) the insurer is secondarily liable to the insured due to an insurance policy, and (3) the insurer pays the insured under that policy, thereby extinguishing the debt owed by the third party." *Id.*

However, under Illinois law, as a general rule, "an unlimited release executed by an insured-subrogor for consideration not specifically including an amount designated as covering the insurer's subrogation interest does not bar a subsequent action by an insurer-subrogee against the tortfeasor, if the tortfeasor or his insurance carrier had knowledge of the insurer-subrogee's interest prior to the release." *Home Ins. Co. v.* *Hertz Corp***, 375 N.E.2d 115, 118 (Ill. 1978).**  Thus, Illinois courts have held that, if an insurer's subrogation rights were *not* prejudiced, an insured may recover under an UIM endorsement without providing notice to her insurer and allowing it to advance payment to her—even where the relevant endorsement requires the insured to do exactly that. *See Kenny v. Assurance Co. of Am.***, 757 N.E.2d 596 (Ill. App. 2001);**

*Richter*, 664 N.E.2d at 1145; *Progressive Direct Ins. Co. v. Jungkans*, 972 N.E.2d 807, 815 **(Ill. App. 2012).**

As to subrogation, an Illinois statute also is relevant.  Section 143a-2(6) of the Illinois Insurance Code, **215 ILCS 5/143a-2(6)**, "allows an insured motorist's carrier to tender to its insured the amount of the proposed settlement between the underinsured tortfeasor and the insured so as to retain its subrogation rights against the underinsured tortfeasor."  *American Family Mut. Ins. Co. v. Hinde*, **705 N.E.2d 956, 957 (Ill. App. 1999).**  With these principles in mind, the Court assesses the record before it.

> **D.**    <u>**Analysis**</u>

On February 19, 2014, Plaintiff was injured in a collision with Susan Lynch near the intersection of Greenmount Road and Central Park Road in Shiloh, Illinois.  Lynch's insurance policy with Country provided bodily injury coverage up to $100,000.  Plaintiff demanded payment from Country for her injuries.

On **January 13, 2016**, Plaintiff's lawyer sent a letter to Meridian advising Meridian that Plaintiff believed the at-fault driver (Lynch) was underinsured, and Plaintiff would be pursuing an underinsured motorist claim under the Policy with Meridian (Doc. 22-1, pp. 11-12).  Five days later, **on January 18, 2016, Plaintiff settled her personal injury claim** with Country for the $100,000 policy limits.  The release Plaintiff executed said that it reflected the entire agreement between the parties and was a full and final compromise, adjustment, and settlement of all injuries and damages (Doc. 22-1, p. 1).

That same day (J**anuary 18, 2016**), Plaintiff's counsel sent a letter to Meridian informing it of an "offer" from Country to settle Plaintiff's claims.  The letter stated "we have received the following offer from the insurance company to settle this matter" and then outlined a proposed distribution of the proceeds of the $100,000 settlement offer (Doc. 11-3 at 2).

On February 4, 2016, Plaintiff's counsel sent Meridian a letter notifying Meridian of the settlement with Lynch ("[w]e have already settled with the tort feasor"), demanding arbitration of Plaintiff's UIM claim against Meridian, and selecting as the arbitrator a local lawyer in Belleville, Illinois (Doc. 11-4).   Meridian denied UIM coverage to Plaintiff, maintaining that Plaintiff violated the terms of the Policy by failing to give Meridian written notice of a tentative settlement and allow Meridian 30 days to advance payment in that amount (to preserve Meridian's rights against Lynch and Country) and failing to file suit against Lynch before finalizing her settlement with Lynch and Country:  "Vasquez has violated the subrogation provision of her UIM coverage, as well as the general conditions of her policy with Meridian, which provides that Vasquez shall do 'nothing after loss to prejudice' Meridian's subrogation rights" (Doc. 11, p. 14).  Meridian's denial letter (Doc. 22-1, pp. 4-7) concluded:  "your claim for underinsured motorist coverage is denied for having violated the notice provisions set forth in the … policy and the statutory notice requirements set forth in … the Illinois Insurance Code, 215 ILCS 5/143a-2, thereby destroying Meridian…'s subrogation rights against the underinsured motorist, Susan M. Lynch" (*id.* at p. 7).

It is undisputed that Plaintiff did not notify Meridian of the settlement offer made by Country on behalf of Lynch *prior* to the day Plaintiff accepted the offer and executed the settlement agreement.  It is also undisputed that Plaintiff did not formally advise Meridian of her intention to accept the offer and execute the general release (in exchange for $100,000) until February 4, 2016 ("We have already settled…").  This was the basis for Meridian's denial of coverage and refusal to arbitrate.

Plaintiff seeks summary judgment on three grounds.  First, she contends that the UIM endorsement is ambiguous and internally contradictory.  Second, she contends that her actions did not prejudice Meridian's subrogation rights.  Third, she contends that she has brought herself within the terms of the Policy, so the burden of proof has shifted to Meridian to affirmatively show the applicability of a policy exclusion (a burden she contends Meridian has not shouldered).

In its cross-motion, Meridian asserts that it properly denied Plaintiff's UIM claim because she violated the Policy provisions by (1) entering into a settlement with the at-fault driver and the driver's insurer without providing advance notice of the tentative settlement to Meridian, and (2) failing to file suit against the at-fault driver and "allowing the statute of limitations to run" (Doc. 25, p. 5).  And, essential to its counterclaim, Meridian argues that the Policy language is not ambiguous or contradictory. The Court must decide whether the Policy language is ambiguous or contradictory before considering the other contentions of the parties.  This entails close examination of the UIM endorsement's provisions.

The Policy provided coverage for bodily injury caused by an accident with the owner or operator of an underinsured motor vehicle for the period of May 16, 2013 to May 16, 2014 (during which the accident occurred). Plaintiff argues that the Policy contains three areas of ambiguity -- Section A of the "Insuring Agreement" provision, Section 1 of the "Additional Duties" provision, and the "Our Right to Recover Payment" provision (Doc. 22 at p. 5).

The UIM endorsement section entitled **INSURING AGREEMENT** provides that Meridian will pay compensatory damages which an insured is legally entitled to recover from the operator of an underinsured motor vehicle because of bodily injury sustained by the insured and caused by an accident. It then states (emphasis added):

A. We will pay under this coverage only after the limits of liability under any bodily injury liability bonds or policies applicable to the "underinsured motor vehicle" have been exhausted by payment of judgments or settlements, unless:
  1. **We have been given written notice of a "tentative settlement" and decided to advance payment to the "insured" in an amount equal to that settlement;** or
  2. We and an "insured" have reached a settlement agreement".

The same endorsement in the **ADDITIONAL DUTIES** section states as follows.

Any person seeking coverage under this endorsement must also:
  1. Give us written notice of a "tentative settlement" and allow us 30 days to advance payment in an amount equal to that settlement to preserve our rights against the owner or operator of the "underinsured motor vehicle".
  2. File suit against the owner or operator of the "underinsured motor vehicle" prior to the conclusion of a "settlement agreement". Such suit cannot be abandoned, or settled without giving us written notice of a "tentative settlement" and allowing us 30 days to advance payment in an amount equal to that settlement to preserve our rights against the owner or operator of the "underinsured motor vehicle."

      3.   Promptly send us copies of the legal papers if a suit is brought.

Plaintiff contends that these portions of the Insuring Agreement and Additional Duties are ambiguous and contradictory, because Section A of the Insuring Agreement says that Meridian will only pay if the underinsured motorist's policy limits have been exhausted by judgments or settlements but that Meridian *will not* pay if it is provided with written notice of a tentative settlement. Therefore, Plaintiff claims, the Insuring Agreement provision directly conflicts with the Additional Duties provision requiring that the insured seeking coverage under the endorsement must give written notice of a tentative settlement to Meridian.

This argument fails. First, Plaintiff incorrectly reads the requirement in Section A of the Insuring Agreement to mean that if she exhausts the limits of the at-fault motorist's policy that is a sufficient (by itself) to trigger UIM coverage, but that Meridian *will not pay* UIM coverage if Meridian is given written notice of a tentative settlement. That is a tortured reading. The only reasonable reading interpretation of this provision is that exhaustion of the at-fault driver's limits is a *necessary* condition for coverage, subject to the two exceptions outlined in Section A.

In other words, the insured has to be legally entitled to the limits of any applicable bodily injury liability policy before Meridian's UIM coverage is available. The policy then lists two exceptions – two situations where the at-fault driver's limits need *not* be exhausted for the insured to receive coverage under the UIM endorsement: (1) if the insured furnished Meridian written notice of a tentative settlement and

Meridian decided to pay that amount to its insured, or (2) if the insured and Meridian reach their own settlement agreement.  Neither of those exceptions is at play here.

Plaintiff did exhaust (and was legally entitled to) the limits of the at-fault motorist (Lynch)'s policy.  Of course, that was not the entirety of what was required of her to be covered under the UIM endorsement.  Plaintiff has not shown (nor can the Court discern) how Section A, on its own, produces any ambiguity.  The Policy can be considered ambiguous "only where its language is subject to more than one reasonable interpretation—we will not strain to find an ambiguity where none exists."  *Berrey v. Travelers Indem. Co. of Am.*, **770 F.3d 591, 596 (7th Cir. 2014)**, *quoting Hobbs*, **823 N.E.2d at 564 (internal quotation marks omitted).**   Nor does Section A become ambiguous when read in conjunction with the Additional Duties provision.

The latter provision plainly requires the insured seeking coverage under the UIM endorsement to "also" do three more things.  That is, *in addition to* any other duties imposed, the insured *must* (1) notify Meridian in writing of any tentative settlement and give Meridian 30 days to pay its insured the amount of the tentative settlement,[3] thereby preserving Meridian's rights against the owner or operator of the underinsured vehicle, (2) file suit against the owner or operator of the underinsured vehicle *before concluding* the settlement agreement, and (3) promptly send Meridian copies of any legal papers if suit has been filed (Doc. 26, p. 6).

---

[3]      Section D of the Insuring Agreement defines tentative settlement as "an offer from the owner or operator of the "underinsured motor vehicle" to compensate an "insured" for damages incurred because of "bodily injury" sustained in an accident involving the "underinsured motor vehicle.

The Additional Duties provision does not conflict with the Insuring Agreement or create any ambiguity in the policy.   In Illinois, when considering whether an ambiguity exists, all the provisions in an insurance contract, like other types of contracts, should be read together, not in isolation. ***Nationwide Agribusiness Ins. Co. v. Dugan***, **810 F.3d 446, 450-51 (7th Cir. 2015),** *citing Glidden v. Farmers Auto. Ins. Ass'n*, **312 N.E.2d 247, 250 (Ill. 1974).**   When the Policy is read as a whole, Plaintiff's interpretation is strained at best.  The purported ambiguity between Section A and the Additional Duties provision rests upon Plaintiff misreading Section A's exhaustion requirement as a sufficient condition to recovery.   The Policy does not guarantee coverage as soon as Plaintiff has exhausted the other driver's policy limits.   That is a threshold requirement.   The Additional Duties section imposes other obligations to coverage, and those obligations do not contradict the provisions of the Insuring Agreement.

It is an inescapable conclusion that the Policy required Plaintiff to notify Meridian in writing of any tentative settlement before finalizing a tentative settlement, giving Meridian 30 days to take action before the settlement with the at-fault underinsured motorist was concluded.  Plaintiff could have met both the requirement of exhaustion and the requirement of notice.[4]

---

[4]     No ambiguity arises from the fact that she could have recovered under the endorsement *without* exhausting the other driver's policy if she had provided written notice to Meridian and they had decided to advance payment to her in the amount of the proposed settlement (as outlined after the word "unless" in Section A of the Insuring Agreement provision).  Of course, that did not occur here.

In support of its argument that the endorsement is unambiguous, Meridian cites *Valentine v. Founders Ins. Co.*, **2010 WL 3713687 (N.D. Ill. Sept. 13, 2010).**  In *Valentine*, the District Court applied Indiana law (which tracks Illinois law on this point) to determine whether a plaintiff was entitled to UIM coverage (the plaintiff's position) or had failed to comply with the policy's requirements (the defendant's position).   The policy language read, "We will pay damages under this coverage caused by an accident with an 'underinsured motor vehicle' only if 1. or 2. below applies." *Id.* **at \*2.** The first scenario was that the insured exhausted the limits of the underinsured motorist's policy.   The second scenario was that the insured had reached a tentative settlement agreement and provided written notice to the insurer, and the insurer advanced payment to the insured within thirty days.   The policy also contained a provision entitled "Additional Duties After an Accident or Loss," stating that the insured "must also" give written notice of a tentative settlement to the insurer and allow the insurer to advance payment to the insured.  *Id.*

Applying Indiana law, Judge James B. Zagel rejected the insured's argument that these two provisions created an ambiguity.  *Id.* **at \*6.**  He found that the insured failed to read the policy as a whole. Judge Zagel granted the insurance company/defendant's summary judgment motion, after concluding that the requirement of notice was clear and the policy language was unambiguous.  *Id.*

An unpublished opinion of another federal district court is not binding, but the rationale of *Valentine* applies here.  Plaintiff argues that *Valentine* is distinguishable because the policy language there created a "clear condition precedent to recovery"

(Doc. 30-1 at 2.).  She claims that the word "unless" in Section A of her endorsement explicitly allows her to recover as soon as she has exhausted the applicable policy limits—i.e., a *sufficient* condition for recovery (*id.* at 3).

However, like the insured in ***Valentine***, Plaintiff Vasquez fails to read the Policy as a whole.  ***Valentine*** held the exhaustion provision to be a *threshold* requirement for recovery.  **Id. at 5.**  Section A of the Insuring Agreement in Plaintiff's Policy operates exactly the same way—whether it is called a necessary condition, condition precedent, or threshold requirement.  Plus, assuming *arguendo* that the language of Section A standing alone is unclear, the meaning immediately becomes clear when the Policy is read as a whole, including the Additional Duties provision.  In the case at bar, the Policy unambiguously required Plaintiff to provide written notice of a tentative settlement and the opportunity for Meridian to advance payment to Plaintiff.

Plaintiff contends the Policy contains a third area of ambiguity, this one contained in the **OUR RIGHT TO RECOVER PAYMENT** provision, which states:

> A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right.  That person shall do:
>   1. Whatever is necessary to enable us to exercise our rights; and
>   2. Nothing after loss to prejudice them.

Plaintiff argues that this language is ambiguous, because it "fails to define or describe what acts by an insured would prejudice Defendant's right to subrogation" (Doc. 22, p. 6).  Plaintiff cites no caselaw in support of this argument and does not flesh out the argument in either her memo supporting summary judgment or her reply brief.

The undersigned finds no inherent ambiguity in the requirement that Plaintiff shall do "nothing after loss to prejudice" Meridian's subrogation rights.  And Illinois law bars the undersigned from straining to find an ambiguity even he desired to.  *See Nationwide Agribusiness*, **810 F.3d at 451**, *citing Hobbs*, **823 N.E.2d at 564.**

In her response to Meridian's summary judgment motion (Doc. 30-1, p. 6), Plaintiff fleetingly and for the first time claims that the Policy contains a *fourth* area of ambiguity -- the requirement (provision 3 of Additional Duties) that she promptly send Meridian copies of the legal papers if a suit is brought against the owner or operator of the underinsured motor vehicle.  Plaintiff says the presence of the word "if" indicates that she need not file suit against the underinsured motorist as required in provision 2 of the Additional Duties section.

Meridian contends that this argument has been waived.  Even if the argument was not waived, it is utterly meritless.   Recall that the Additional Duties section provided:

> Any person seeking coverage under this endorsement must also:
> 1. Give us written notice of a "tentative settlement" and allow us 30 days to advance payment in an amount equal to that settlement to preserve our rights against the owner or operator of the "underinsured motor vehicle".
> 2. File suit against the owner or operator of the "underinsured motor vehicle" prior to the conclusion of a "settlement agreement". Such suit cannot be abandoned, or settled without giving us written notice of a "tentative settlement" and allowing us 30 days to advance payment in an amount equal to that settlement to preserve our rights against the owner or operator of the "underinsured motor vehicle".
> 3. Promptly send us copies of the legal papers if a suit is brought.

There is only one reasonable interpretation of these provisions, read together. "**2.**" is not an absolute duty to file suit.  Rather, it is a requirement that the insured file suit *before concluding a settlement* with the underinsured motorist.  *If* this happens (the insured files a lawsuit), then "**3.**" requires that the insured send the insurer the relevant legal papers.  There is no ambiguity in this provision.

The Court rejects Plaintiff's argument that the Policy contains ambiguities that must be interpreted against Meridian and entitle Plaintiff to UIM coverage.  Plaintiff asserts that even if the Court finds the Policy unambiguous, she is nonetheless entitled to coverage, because she did not prejudice Meridian's subrogation rights.  Conversely, Meridian maintains that its subrogation rights were prejudiced by Plaintiff, *before consummating her settlement with Lynch,* (1) failing to give Meridian notice and a chance to advance payment to her equal to the amount of the proposed settlement and (2) failing to file suit against Lynch.  On this front, the parties primarily dispute the applicability of *Richter v. Standard Mut. Ins. Co.,* **664 N.E.2d 1140 (Ill. App. 1996)**.

In *Richter*, an insured with $100,000 in coverage (Richter) collided with an underinsured motorist with only $50,000 (Vowell).  Richter filed suit against Vowell to recover damages for the injuries sustained in the crash.  After notifying her insurer about the accident and the insufficient coverage of Vowell, Richter settled her claim against Vowell for the $50,000 policy limits. *Id.* **at 1141-42.**  The insurer denied UIM coverage to Richter, and she sued for a declaration that she did not breach the policy. *Id.*

In Richter's declaratory judgment suit, the trial court sided with Richter, finding that (1) Vowell's insurance company and her attorney knew of Richter's intent to pursue a UIM claim against her own carrier, (2) the release executed by Richter did not include an amount covering the subrogation rights of Richter's insurance company, and (3) Richter's insurer could have moved to intervene in the state court suit filed by Richter against Vowell but opted not to do so.

The appellate court affirmed, noting that crucial to disposition of the appeal was whether Vowell or her insurer (State Farm) had notice of the subrogation rights of Richter's insurer.  The answer to that question was yes; plus "defendant had ample notice of an impending settlement between plaintiff, Vowell, and State Farm."  *Richter*, **664 N.E.2d at 1145**.   Next the court pointed out that Richter's insurer's subrogation interest was not prejudiced by Richter's settlement of the suit against Vowell, because "defendant's subrogation rights survived the settlement," *Richter*, **664 N.E.2d at 1144**, and the UIM carrier (having sufficient warning of an impending settlement) failed to take action to protect its interest.

As to the last point, the court distinguished a case relied on by Richter's insurance company – *Standard Mutual Insurance Co. v. Petreikis*, **538 N.E.2d 1327 (Ill. App. 1989) –** which raised the concept of estoppel.  In *Petreikis*, the injured insureds were found *not* entitled to UIM coverage based on their failure to comply with a policy term (and statutory requirement) that they give advance notice of any intention to settle with the underinsured at-fault motorist.  In so finding, the court recognized this principle of estoppel:  "Where a person stands by and sees another about to commit, or

in the course of committing, an act infringing on his rights and fails to assert his title or right, he will be estopped afterward to assert it." *Petreikis,* **538 N.E.2d at 1334.** The appellate court in *Petreikis* found no conduct by the insurer had induced the insureds to act to their detriment.

The *Richter* court quoted the same principle but immediately distinguished "as the exact opposite" the facts before it, finding that (in *Richter*) the insurer had *ample notice* of an impending settlement and could have taken steps to protect its subrogation interest, but "stood by … while seeing plaintiff insured commit an act [the insurer] now claims was detrimental to its interest." *Richter,* **664 N.E.2d 1144-45.** In other words, the insurer – apprised of the situation – failed to take action to protect its position and was thereby estopped from denying coverage.

In the case *sub judice*, Plaintiff Vasquez relies on *Richter* (and *Guese v. Farmers Inter-Insurance Exchange,* **606 N.E.2d 215 (Ill. App. 1992)**) to argue that Illinois law does not necessarily require written notice of a tentative settlement in order to protect an insurer's subrogation rights. Meridian cites *Petreikis* in urging this Court to find that Plaintiff Vasquez is not entitled to UIM coverage.

Meridian correctly states that the communication between Meridian and Plaintiff's counsel (all of which is properly before the Court on these cross-motions) is uncontested and that Plaintiff's attorney is charged with knowledge of legal and contractual obligations of the Policy (including the requirement of written notice of any tentative settlement). It is undisputed that the first letter that even *mentions* a tentative settlement was sent the same day Vasquez executed the release (January 18, 2016).

Plaintiff counters that Meridian is estopped from denying coverage, because once Meridian was told via January 13, 2016-dated letter that Plaintiff had retained counsel and intended to pursue a UIM claim, Meridian had a duty to "make further inquiries regarding Plaintiff's suit against the tortfeasor in order to protect its subrogation rights" (Doc. 30-1, p. 10). On the undisputed facts of this case (which stand in bold contrast to those of the cases Plaintiff relies upon), the Court rejects Plaintiff's argument.

Here, the fact that on January 13, 2016, a lawyer sent Meridian a letter saying he had been hired to represent Plaintiff, that a "preliminary" investigation indicated the at-fault motorist was underinsured, and that Plaintiff intended to pursue coverage under her UIM endorsement does not equate to giving Meridian advance written notice that Plaintiff *was settling* with the at-fault motorist. Plaintiff completed the settlement within five days (on January 18, 2016) and did not even tell Meridian of the settlement *offer* until the same day she finalized the settlement by signing the release (January 18, 2016). The record is devoid of evidence of action or inaction by Meridian that hindered Plaintiff in complying with her obligations, e.g., to provide written notice of the tentative settlement with Lynch and Country and allow Meridian 30 days to advance payment to her. Simply put, Meridian is not estopped from arguing that Plaintiff breached the insurance contract by failing to give notice to Meridian as required by the Policy and Section 143a-2(6) of the Illinois Insurance Code.

Plaintiff relies on *Guese* to argue that Meridian's failure to produce evidence showing Lynch and Country's lack of knowledge concerning Meridian's subrogation interest means that the question must be resolved in her favor. ***Guese*, 606 N.E.2d at 218.**

Plaintiff also is adamant that Meridian's subrogation rights were not *totally* destroyed by the general release she executed, since Meridian placed a lien on Plaintiff's third-party claim with Country to protect its subrogation rights for medical payment benefits.

The Court disagrees.  In ***Richter***, the insured had filed suit against the tortfeasor before settling with the tortfeasor, so the insurer could intervene in that action to protect its subrogation interest.  In the case at bar, Plaintiff never filed a suit against Lynch before finalizing the settlement.   In ***Guese***, the insurer was found to have had sufficient knowledge of the impending settlement, *and* the policy did not require the insured to file suit before concluding a settlement.  On that record, the court found a *fact issue* as to whether the insurer's subrogation interest had been prejudiced, so summary judgment was not warranted.

Here, even if Lynch and Country had knowledge of Meridian's interest, and even if the general release did not *fully* destroy Meridian's subrogation rights, Plaintiff substantially prejudiced Meridian by failing to provide notice of the impending settlement and give Meridian time to pay Plaintiff the settlement amount and file a subrogation claim against Lynch.  Furthermore, if Lynch and Country's knowledge of Meridian's interest (and the wording of the release) means that Meridian's subrogation rights were *not* prejudiced by Plaintiff's failure to give advance notice that she was accepting a settlement, Meridian still was justified in denying Plaintiff coverage, because she breached a second and independent duty under the Policy – the duty to file suit against the underinsured motorist "prior to the conclusion of a 'settlement agreement'" (Doc. 22-1, p. 10).

Plaintiff substantially prejudiced Meridian by not filing suit against Lynch before concluding the settlement (as required by the Policy) or giving Meridian enough notice of the tentative settlement for Meridian to safeguard its subrogation interest.[5]  Either of these actions would have allowed Meridian to step into Plaintiff's shoes to assert her right to compensation in the amount *above* the limits of Lynch's policy, which Meridian would have had to pay to Plaintiff under the UIM endorsement.

In *Guese*, factual issues as to whether the insurer's subrogation rights were prejudiced by the insured's execution of a general release in favor of the underinsured motorist precluded summary judgment.  Here there are no such issues – Meridian was undeniably prejudiced by Plaintiff's failure to comply with the notice requirement.  Plus, in *Guese*, the insured notified his insurer of his intention to pursue an UIM claim *over seven months* (not just a few days) before executing the release, *plus* the insurer failed to respond on several occasions to contact by the insured's counsel.  Those facts differ markedly from ours.

Here the uncontroverted evidence establishes that Plaintiff waited until the eleventh hour to communicate anything that could have possibly put Meridian on notice that she would be executing a release.

---

[5]     Plaintiff's January 18th letter told Meridian she had a settlement *offer*. That very day Plaintiff accepted the offer and signed the release.  It is actually unclear which happened first – i.e., whether the release was executed *before* or *after* counsel told Meridian of the tentative settlement (the "offer").  Meridian says it did not learn of the offer until *after* Plaintiff had already signed the release (Doc. 25, p. 16).  The Court construes all facts and reasonable inferences in Plaintiff's favor on Meridian's motion.  Even with the record construed in this favorable light, Plaintiff gave Meridian *less than one-day's notice* of a tentative settlement.

Additionally, as noted above, the Court's grant of summary judgment in Meridian's favor does not rest solely on the violation of the Policy term requiring advance notice of any tentative settlement with the underinsured motorist.  Even if the Court resolves that issue (compliance with the advance notice provision) in Plaintiff's favor, Meridian is entitled to summary judgment, because Plaintiff violated the Policy by failing to file suit against Lynch before concluding the settlement.  This is a clear, simply-worded provision, and the record is wholly devoid of any reason excusing Plaintiff from compliance with this contractual obligation.

The Policy also stated that Plaintiff was required to do nothing after loss to prejudice Meridian's subrogation rights.  The record discloses that Plaintiff contravened this requirement.  Not until January 13, 2016, nearly two years after the accident (and less than five weeks before the statute of limitations ran), did Plaintiff inform Meridian that she had retained counsel and would be pursuing a UIM claim on the Policy.  Five days later, Plaintiff informed Meridian of a settlement *offer*.   She executed the general release **the same day** (January 18, 2016).  She did not give Meridian notice of the consummated settlement until February 4, 2016 ("We have already settled with the tort feasor, Susan M. Lunch, for her policy limits" (Doc. 18, ¶ 8).

To recap, Plaintiff breached her duty to give Meridian thirty days to advance payment to her in an amount equal to the tentative settlement.  If, as Plaintiff suggests, *Guese* stands for the proposition that an insurer seeking summary judgment against an insured after settlement between the insured and a tortfeasor must show that the settlement substantially prejudiced the insurer, Meridian has made that showing.  On

February 4, 2016, having never filed suit against Lynch and with just two weeks left to do so before the statute of limitations ran, Plaintiff formally advised Meridian that she had settled with Lynch and Country.  Plaintiff's unreasonably late notice to Meridian of the tentative settlement, her execution of the release without first allowing Meridian to advance payment to her, and her completion of the settlement with Lynch and Country without first filing suit (in which Meridian could have intervened), combined to substantially prejudice Meridian's right to subrogation.

Simply put, Meridian can rely on the unambiguous terms of the Policy to deny coverage in this case.  Plaintiff's actions are distinguishable from the insured's in *Richter* and more significantly prejudicial to her insurer.  Plaintiff settled the suit the same day she notified Meridian of a potential "offer."  There was no chance to match the settlement amount or move to intervene in a state court lawsuit, and the statute of limitations was set to expire within two weeks of the day Meridian received notice that Plaintiff had completed the settlement (via the February 4, 2016 letter).  Meridian never had a fair opportunity to prevent the harm to its subrogation rights, and those rights were severely damaged by Plaintiff's conduct.

Plaintiff also argues that Meridian has failed to show the required "good cause" for the Policy requirement that the insured file suit against an underinsured motorist before concluding settlement with the underinsured motorist.  Assuming the statute on which Plaintiff relies for this argument applies (it is directed at *uninsured* rather than underinsured motorists), Plaintiff's argument is a nonstarter.

Section 143a-2(7) of the Illinois Insurance Code codifies an insurer's right to require an insured to sue an at-fault motorist:  "An insurance carrier may upon good cause require the insured to commence a legal action against the owner or operator of an **uninsured** motor vehicle before good faith negotiation with the carrier."  **215 ILCS 5/143a-2(7) (emphasis added)**.

As is evident from the above analysis, the Court finds good cause existed for Meridian to include the provision requiring Plaintiff to file suit against an underinsured motorist before completing any settlement with the underinsured motorist.  In *Richter*, the insurer's ability to intervene in the underlying lawsuit filed by the insured gave it the opportunity to protect its interest. The same is true in *Kenny v. Assurance Co. of Am.*, **757 N.E.2d 596, 603 (Ill. App. 2001).**  These cases and the case at bar illustrate exactly why Meridian was justified in including the requirement to file suit in its policy—to avoid impairment or destruction of its subrogation rights if the insured fails to provide sufficient advance notice of a settlement or lets the statute of limitations run.

Plaintiff's final argument focuses on the burden of proof.  Plaintiff asserts that Meridian attempts to avoid coverage by invoking an *exclusion* (i.e., the notice provision of the Policy), so the burden of proof should fall to Meridian to show that the claim falls within that exclusion.  *See American States Ins. Co. v. Action Fire Equip., Inc.*, **509 N.E.2d 1097, 1102 (Ill. App. 1987) ("where an insurer attempts to limit liability by excluding coverage under certain circumstances, it has the burden of showing that the claim falls within the exclusion relied upon….").**

Notice provisions generally are a "valid condition precedent to the triggering of the insurer's contractual duties," rather than an exclusionary provision.  *Northbrook Prop. & Cas. Ins. Co. v. Applied Sys., Inc.*, **729 N.E.2d 915, 921-22 (Ill. App. 2000).**  But the required notice at issue in this case is *not* notice to the insurer that the insured intends to make a claim for coverage under the policy.  It is notice of a tentative settlement with the underinsured motorist.  The effect of the requirement that notice be given of a tentative settlement is to preclude coverage, so it is arguably akin to a policy exclusion.  *See Rutgens*, **419 N.E.2d at 63,** *citing Clemmons v. Travelers Ins. Co.*, **410 N.E.2d 445, 449 (Ill. App. 1980).**

However, whether the notice provision here is a condition precedent to recovery or a policy exclusion, Meridian has met its burden and demonstrated that Plaintiff failed to comply with the notice requirement.  And if this breach alone did not result in prejudice (because Country and Lynch knew of Meridian's interest prior to the settlement), Meridian has also established that Plaintiff breached the Policy by failing to file suit before concluding the settlement.  The Court has determined that Meridian had good cause for this requirement.  Plaintiff's failure to comply with this requirement severely prejudiced Meridian.  Like the notice requirement, Plaintiff's failure to file suit, whether construed as not meeting a condition precedent or as triggering a policy exclusion, operates to preclude her from coverage under the UIM endorsement.

Today's adverse ruling against Vasquez could have been avoided had her counsel exercised one of three options.  First, they could have met the notice requirements.  Barring that, they could have asked Lynch to waive the statute of

limitations for a sufficient time to enable Vasquez to meet the notice requirements. And failing all that, they could have filed suit against Lynch, which would have preserved Meridian's subrogation interest.

### E.    Conclusion

For all these reasons, the Court **DENIES** Plaintiff's motion for summary judgment (Doc. 21) and **GRANTS** Meridian's motion for summary judgment (Doc. 24).

The Clerk of Court shall enter judgment in favor of Defendant Meridian Security Insurance Company, named as State Auto Insurance Companies, and against Plaintiff Monica Vasquez.

**IT IS SO ORDERED.**

DATED: December 14, 2016.

*s/ Michael J. Reagan*
Michael J. Reagan
United States District Court